**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In Re: | : | **Chapter 7** |
| **Michael Geiger,** | : | |
| **Debtor.** | : | **Case No. 10-10513  (JKF)** |
| _____ | : | |
| **American Casein Company,** | : | |
| **American Custom Drying,** | | |
| **William D. Cabot, M.D.,** | : | |
| **Susan Cabot, Adam Shipley Cabot,** | | |
| **Brandon Scott Cabot, and** | : | |
| **Jean Adams,** | | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| **Michael Geiger,** | : | |
| **Defendant.** | : | **Adversary No. 10-0228** |
| _____ | | |

# <u>MEMORANDUM OPINION</u>

BY:   Jean K. FitzSimon
United States Bankruptcy Judge

Before the Court is the Motion of Defendant and Debtor, Michael Geiger, to

dismiss the above-captioned adversary proceeding pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  The three-count Complaint (the

"Complaint") seeks denial of discharge pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4),

and (a)(6) of the Bankruptcy Code.  The Complaint attaches and incorporates

both a Motion of the Plaintiffs[1] for an order appointing a Chapter 11 Trustee or, alternatively, for conversion of the Debtor's bankruptcy case to one under Chapter 7 (the "Trustee Motion") and a complaint for declaratory judgment in Adversary Proceeding No. 10-0129 (the "Declaratory Judgment Complaint").  The Debtor maintains that the Complaint must be dismissed with prejudice because it is cobbled together in a fashion that makes it impossible for him properly to answer (and that incorporation of the Trustee Motion and the Declaratory Judgment Complaint are not proper), that Plaintiffs fail to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b), and fail to plead the necessary elements of §§ 523(a)(2), (a)(4), and (a)(6).  The Debtor also argues that the individual Plaintiffs (as opposed to the corporations) should be dismissed because they lack standing.

Upon consideration, the Court shall dismiss the Complaint without prejudice.  The Court finds that while the Declaratory Judgment Complaint (unlike the Trustee Motion) may be incorporated and considered as part of the Complaint, the pleading as a whole does not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  The Court also agrees with the Debtor that the individual Plaintiffs lack standing to pursue this suit.  They will be dismissed with prejudice.

---

[1] Jean Adams, who is a Plaintiff in this adversary, was not a party in the attached Motion to Appoint a Trustee.

2

# I. BACKGROUND

On January 25, 2010, the Debtor, who served as Executive Vice President

of American Casein Company ("AMCO") and American Custom Drying ("ACD")

from 2005 until December 2009, filed for protection under Chapter 11 of the

Bankruptcy Code.  Complaint at ¶19.  Following the Trustee Motion (which

sought the appointment of a trustee, or in the alternative the conversion of

Mr. Geiger's bankruptcy), this case was converted to one under Chapter 7 on

March 9, 2010.  Docket Entry No. 69.[2]  Prior to the filing of the above-captioned

adversary (hereinafter referred to as the "Non-dischargeability Adversary"), two

adversaries were filed in or removed to the Debtor's bankruptcy.  Each

proceeding, as well as the Trustee Motion, is discussed below.

***Cabot et al. v. Geiger et al.,[3] Adversary No. 10-0077***
***(the "Removed Adversary")***

On March 5, 2010, Adversary No. 10-0077 was removed to this Court.[4]

---

[2] More than one adversary proceeding will be discussed in this Opinion.  If a specific adversary number is not referenced, then the reference is to the matter before the Court, Adversary No. 10-0228.

[3] The full caption of this proceeding is "William D. Cabot, M.D., Susan Cabot, Adam Shipley Cabot and Brandon Scott Cabot v. Michael Geiger, David W. Webster, Executor, The Estate of Richard L. Shipley, Jean Adams, Donna Geiger, American Casein Company, a New Jersey Corporation and American Custom Drying, a New Jersey Corporation."  See Amended Complaint, Adversary No. 10-0077, Docket Entry No. 3, "Main Document," p. 10.

[4] The proceeding originally was filed and all matters until now were adjudicated in New Jersey state court.  The adversary was removed to this Court from the New Jersey Bankruptcy Court.  It is unclear why this is so.

The Amended Complaint[5] states three causes of action: 1) oppression of minority

shareholders (pursuant to N.J.S.A. § 14A:12-7); 2) breach of fiduciary duty

(pursuant to N.J.S.A. § 14A:12-7); and 3) violation of shareholders' right of

inspection (pursuant to N.J.S.A. § 14A:5-28 or N.J.S.A. § 14A:12-7).  Adversary

No. 10-0077, Docket Entry No. 3, pgs.19-23.

Plaintiffs in the Removed Adversary own stock in AMCO and ACD

(collectively, the "Companies").  Adversary No. 10-0077, Docket Entry No. 3,

pg.11.  AMCO imports, manufactures, refines and sells casein products, by-

products of cows' milk; ACD does custom drying, blending and grinding of casein

products for food, pharmaceutical and chemical industries.  Id.  Both AMCO and

ACD were founded by Richard L. Shipley, who died on January 30, 2005.

Adversary No. 10-0077, Docket Entry No.3, pg. 12.  Plaintiff Susan Cabot and

Defendant Jean Adams are two of Shipley's three children.  Id.  At the time of

Mr. Shipley's death, Plaintiffs collectively owned approximately 13% of the voting

shares in AMCO and approximately 37% of the voting shares in ACD.  Id.  The

Complaint in the Removed Adversary alleges that following Mr. Shipley's death,

Mr. Geiger became involved in the management of the Companies "although he

does not own any voting stock in either ACD or AMCO . . . operates with no

oversight and purports to be answerable to no one."  Adversary No. 10-0077,

Docket Entry No. 3, pg. 15.  The Plaintiffs allege that Mr. Geiger refused their

---

[5] A Second Amended Complaint is included in the record.  Adversary No. 10-0077, Docket Entry
No.3, pg. 63.  However, this version is marked "pending" and there is no indication on the record that this
amendment was granted.  Pending motions for summary judgment are also part of the record.  See
Adversary No. 10-0077, Docket Entry No. 3, at pgs. 85, 101, 289, 303, 314, and 334.

legitimate attempts to be involved in and consulted about ACD and AMCO. Adversary No. 10-0077, Docket Entry No. 3, pgs.15-17.

The Defendants in the Removed Adversary each answered the Amended Complaint in the New Jersey State Court.  Adversary No. 10-0077, Docket Entry No. 3, pgs. 2-21; 26-41.  Following litigation between the parties, the State Court entered an "Order to Show Cause with Temporary Restraints" on December 23, 2009 (the "Show Cause Order") which, among other things, mandates that the Debtor return $1,474,000 to AMCO and also preliminarily enjoins Mr. Geiger from communicating with any customer, vendor, or employee of AMCO or ACD. Adversary No. 10-0077, Docket Entry No. 3, pgs. 80-86.  On January 14, 2010, the New Jersey Court entered two additional orders: one denying modification of the Show Cause Order for "reasons set forth on the record" (Adversary No. 10-0077, Docket Entry No. 3, pg. 79) (the "Show Cause Denial Order") and the other (the "Supplemental Show Cause Order") stating, among other things, that Michael and Donna Geiger (the Debtor and his wife) must turn over $350,000 to their attorney by January 19, 2010 as part of the obligation to pay $1,474,000 to AMCO.  The Supplemental Show Cause Order further made clear that Mr. Geiger failed to comply with the terms of the Show Cause Order, that it was necessary for the Geigers to account for all sums removed from the Companies, and that the Companies shall review their books and records and provide an accounting of all sums distributed to the Geigers.  Adversary No. 10-0077, Docket Entry No. 3, pgs. 76-78.

On September 14, 2010, a status hearing was held with regard to the

Removed Adversary.  During that hearing, the Companies spoke of a plan to file

an amended complaint naming themselves as plaintiffs in this action (currently,

they are defendants).  Certain Defendants, including Jean Adams and the Debtor,

expressed their intent to oppose such a pleading.  At this point, however, nothing

of this nature has been filed in the Removed Adversary.  There is no currently

scheduled trial in this matter before this Court.

### *AMCO and ACD v. Robert Holber (Trustee), Adversary No. 10-0129 (the "Declaratory Judgment Action")*

Shortly after the Removed Adversary was brought to this Court, on April 9,

2010, the Companies brought suit in this Court against Robert H. Holber, Interim

Chapter 7 Trustee of the Estate of the Debtor, seeking a declaratory judgment

that the Debtor's listing in his Schedule of Financial Affairs (Docket Entry No. 48)

of $1,023,212.13 in possession of Prestige Corporation and listed as belonging to

AMCO, properly belongs to the Companies and may be used by them without

objection.  Complaint in Adversary No. 10-0129 at ¶¶17, 29, 41.  The Complaint

states that Prestige paid a total of $1,256,622 to AMCO (the "Funds").  Id. at ¶19.

In his Answer filed on May 4, 2010, the Trustee asserted a counterclaim seeking

turnover of the funds.  Adversary No. 10-0129, Docket Entry No. 7, pgs. 4-5.

On May 21, 2010, the Court entered an Order approving a stipulation

agreed to by the parties in the Declaratory Judgment Action (the "Stipulation").

Adversary No. 10-0129, Docket Entry No. 9.  Pursuant to the Stipulation,

6

$500,000 of the Funds was transferred to AMCO and $756,622 to the Trustee.

Id. at 3.  The Stipulation reserves the rights of all parties, including the Trustee's

right to continue investigation into entitlement to the Funds.  Id. at 4.  The

Declaratory Judgment Action Complaint was withdrawn without prejudice, id. at 5,

and Adversary No. 10-0129 was closed on June 9, 2010.

### The Trustee Motion

The Trustee Motion was filed in the Debtor's main bankruptcy case by the

Companies, William Cabot, Susan Cabot, Adam Shipley Cabot and Brandon

Scott Cabot on February 2, 2010.

Like the Removed Adversary, the Trustee Motion details the history of the

ownership and management of the Companies.  Pursuant to the estate plan of

Richard Shipley, Jean Adams (the Debtor's mother-in-law) will own approximately

52% of the outstanding voting shares of ACD and AMCO and Susan Cabot will

receive the remaining portion.  Main Bankruptcy Case, Docket Entry No. 15 at

¶22.  This means that after final distribution, the Cabots collectively will own

approximately 45% of the voting shares of AMCO, 48% will be owned by

Ms. Adams, and the remainder (7%) will be owned by Mrs. Geiger (a

granddaughter of Mr. Shipley).  Id.  After distribution of the shares of ACD, the

Cabots collectively will own the 48% of the voting shares not owned by Jean

Adams.  Id.  Because shares have not yet been distributed from the estate of

Richard Shipley, Mr. Webster (the executor of the estate) remains the owner of

the majority of the stock of the Companies.  Id. at 23.

Mr. Shipley was the sole board member, and neither of the Companies had a board of directors at the time of his death.  Main Bankruptcy Case, Docket Entry No. 15 at ¶24.  Because Mr. Webster and the Cabots could not agree on a board for AMCO, no board was elected.  Id. at ¶25.  Mr. Webster was elected as the sole board member of ACD.  Id.  The Trustee Motion alleges that "Mr. Webster made no attempt to oversee the Debtor. . . .  Instead, he actively supported Debtor's effort to avoid any oversight [in running the Companies]."  Id. at ¶26.

The Trustee Motion alleges that, after the Debtor's mother-in-law, Jean Adams, engaged new counsel in the Removed Adversary and "threatened to reveal the Debtor's wrongful conduct," main Bankruptcy Case, Docket Entry No. 15 at 8-9, the Debtor resigned and illegally took $1,474,000 from the Companies.  Id. at 39.  The Debtor characterized these payments as a $734,220 severance payment, a $586,891 bonus payment for the years 2005 to 2008 and $153,895 in salary and bonus for 2009.[6]  Id.  at ¶40.[7]  The Trustee Motion further alleges that the Debtor falsely asserted that he was not leaving the Companies, despite his intention and plans to do so.  Id. at 9-10.

In December 2009, the Companies hired Phoenix Management Services and elected Ms. Adams and Mrs. Cabot as board members of each of the

---

[6] The Court recognizes that these three amounts do not equal $1,474,000; they equal $1,475,006.

[7] The Trustee Motion argues that none of the $1,474,000 may be characterized as severance, salary, or bonus payments as the Debtor argues.  Docket Entry No.15 at 22-26.

Companies.  Main Bankruptcy Case, Docket Entry No. 15 at ¶52.  The Trustee

Motion alleges that the Debtor did nothing to prepare the Companies for his

departure, left them completely unprepared, and refused to cooperate with interim

management.  Id. at 12-13.

　　According to the Trustee Motion, on December 15, 2009 (the date upon

which Mr. Geiger's termination from the Companies was effective), the Debtor

secretly instructed the Companies' controller, Jack Pipalla, to send a "borrowing

base certificate" to PNC (the "Bank").  Main Bankruptcy Case, Docket Entry

No. 15 at ¶¶53,63; Exhibit K.  The Trustee Motion alleges that the Debtor took

this action "knowing it would be very harmful to the Companies" because the

certificate revealed a negative available balance in excess of $500,000.[8]  Id. at

¶63.  Apparently, Mr. Pipalla thought that an accounting error, rather than an

excess draw, caused the appearance of a negative balance on the borrowing

base certificate.  Id. at ¶64.[9]  Nonetheless, according to the Trustee Motion,

Mr. Geiger instructed Mr. Pipalla to submit the borrowing base certificate to the

Bank (despite "the uncertainty as to the actual facts").  Id.  The Trustee Motion

further alleges that the Debtor attempted to sour the Bank's relationship with the

Companies upon his departure.  Id. at 15-18.

---

[8] The Trustee Motion also asserts that, contrary to normal practice, the Debtor did not sign the borrowing base certificate and that the certificate did not indicate on its face that it had a negative balance. Main Bankruptcy Case, Docket Entry No. 15 at ¶66.

[9] Mr. Pipalla, in the portion of his deposition provided, speaks not of his belief in an accounting error, but that he thought "there was a problem with the inventory."  Main Bankruptcy Case, Docket No. 15, Exhibit L, pg. 3 (page 56 of the deposition transcript).

Following the Debtor's departure, the Companies, along with the other

Plaintiffs in the Removed Adversary, sought relief in the New Jersey Superior

Court.  As described above, Judge Hogan of that Court entered three orders in

late 2009 and early 2010, directing the Debtor to account for or place in trust all

sums taken from the Companies (the "Show Cause Order," the "Supplemental

Show Cause Order", and the "Show Cause Denial Order").  Main Bankruptcy

Case, Docket Entry No. 15 at 19-20.  At a January 4, 2010 deposition, the Debtor

admitted that he had taken an unknown amount of money from the Companies

(in addition to the $1.47 million he took on November 6, 2009) since 2005.  Id. at

¶80.  The Debtor further testified at his deposition that he had failed to comply

with the conditions of the Show Cause Order despite having certain assets

available for delivery.  Id. at ¶81.

On January 22, 2010, a consent order was entered in the New Jersey

State Court authorizing the release of $688,000 of the Debtor's funds to AMCO.

Main Bankruptcy Case, Docket Entry No. 15 at ¶112.  However, the Trustee

Motion alleges that the Debtor failed to comply with the Show Cause and

Supplemental Show Cause Orders.  Id. at ¶113.

The Companies hired a forensic accounting firm, Nihill & Riedley, which,

upon an initial analysis, determined that the Debtor has misappropriated

$1,796,504 (in addition to the $1.47 million that the Debtor took from the

Companies in November 2009).  Main Bankruptcy Case, Docket Entry No. 15,

at 21; Exhibit T.

On January 25, 2010, two days before a scheduled hearing on the Debtor's

non-compliance with the Supplemental Show Cause Order, the Debtor filed his

bankruptcy case in this Court.  Main Bankruptcy Case, Docket Entry No. 15 at

¶119.  The Trustee Motion was filed by the Cabots a mere eight days later

because, as they argued "[t]he Debtor's conduct is that of a man who cannot be

trusted and who has and will abuse this Court's jurisdiction and the protections of

the Bankruptcy Code for improper purposes."  Id. at ¶133.  In the alternative, the

Trustee Motion sought conversion of the Debtor's case to Chapter 7.  Id. at

32-34.  As stated above, on March 9, 2010, following a hearing on the Trustee

Motion and with the consent of the Debtor, the Debtor's bankruptcy case was

converted to one under Chapter 7.  See main Bankruptcy Case, Docket Entry

No. 69.

### The Complaint in the Non-dischargeability Adversary

The Complaint in the Non-dischargeability Adversary was filed on June 4,

2010 and seeks a denial of discharge of Mr. Geiger's debt to the Companies

pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).  The relief requested in the

Complaint is based on the Debtor's actions as described in the Removed

Adversary, the Declaratory Judgment Action, and the Trustee Motion.  Adversary

No. 10-0228, Docket Entry No. 1, pg. 3.  As noted above, the Complaint

incorporates by reference the Trustee Motion and the Declaratory Judgment

Action and attaches these documents as exhibits thereto.  Id. at ¶¶14-15;

11

Complaint, Exhibits A and B.  Plaintiffs seek denial of the discharge of a total debt

of $4,523,127 (the "Debt").  Id. at ¶16.[10]  The Debt consists of the following sums:

> (i) $1.47 million the Debtor allegedly misappropriated
> from the Companies in November 2009;[11]
>
> (ii) Approximately $1,796,504 the Debtor allegedly
> misappropriated from the Companies and used to pay
> for personal expenses since 2005, according to the
> analysis of Nihill & Riedley; and
>
> (iii) $1,256,622 which the Debtor allegedly
> misappropriated and transferred to Prestige Technology
> ("Prestige") (less any sums that may be turned over to
> the Companies by the Trustee).

Complaint at ¶16.[12]

On July 6, 2010, the Debtor filed the Motion to Dismiss.  Docket Entry

No. 6. The Plaintiffs responded on August 6, 2010.  Docket Entry No.14 (the

"Response").  A hearing regarding the Motion was held on September 22, 2010,

and the matter is now ripe for adjudication.

## II.  LEGAL STANDARD

A claim will be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(6) for "failure to state a claim upon which relief can be granted."

---

[10] The Complaint notes that the facts and procedural background of the Removed Action are, in turn, included in the Trustee Motion.  Complaint at ¶14.

[11] It is admitted that the Debtor returned $688,000 of this amount to the Companies on January 22, 2010 pursuant to a Consent Order in the Removed Adversary.  Complaint at 4, n.2.

[12] The Complaint notes that the Debtor refused to testify at the 341 Meeting of Creditors, invoking his Fifth Amendment rights.  Complaint at 4, n.1.

Fed.R.Civ.P. 12 (b)(6).  In order to survive a motion to dismiss, a complaint "does

not need detailed factual allegations, [but] a plaintiff's obligation to provide a

formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Factual

allegations must be enough to raise a right to relief above the speculative level."

Id. (citing 5 Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-

236 (3d ed. 2004)).  Although a court must accept as true all factual allegations in

a complaint, it is "not bound to accept as true a legal conclusion couched as a

factual allegation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) (internal

quotation marks omitted).  "[O]nly a complaint that states a plausible claim for

relief survives a motion to dismiss. . . .  Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  Id.

(citation omitted).

A well-pleaded complaint may not be dismissed "simply because 'it strikes

a savvy judge that actual proof of those facts is improbable, and that a recovery is

very remote and unlikely.'"  Hobson v. St. Luke's Hospital and Health Network,

2010 WL 3220365, at *3 (E.D. Pa. Aug. 12, 2010) (citing Twombly, 550 U.S. at

556).

## III.   DISCUSSION

### Incorporation by Reference of the Attached Exhibits

The Debtor contends that neither the Declaratory Judgment Action

Complaint nor the Trustee Motion can be properly incorporated pursuant to the

Federal Rules.  Because the Federal Rules treat the incorporation of pleadings

(including complaints) and all other types of exhibits differently, the two exhibits

attached to the Complaint will be discussed separately.

***The Trustee Motion Cannot Properly be Incorporated***

Taking the second matter raised by the Debtor first, the Court agrees with

the Debtor that the Plaintiffs have improperly sought to incorporate a motion into

a complaint.  Rule 10(c) of the Federal Rules of Civil Procedure governs a party's

attempt to incorporate an exhibit into its pleading.  That portion of the Rule states:

> A statement in a pleading may be adopted by reference
> elsewhere in the same pleading or in any other pleading
> or motion. A copy of a written instrument that is an
> exhibit to a pleading is a part of the pleading for all
> purposes.

Fed.R.Civ.P. 10(c).  Because a motion is not included in the rather limited subset

of what constitutes a pleading, <u>see</u> Fed.R.Civ.P. 7(a),[13] the Plaintiffs may not rely

on the first sentence of Rule 10(c) in their attempt to incorporate the Trustee

Motion as part of the Complaint.  May they successfully rely on the second

sentence of Rule 10(c), the part of the Rule stating that "a written instrument" that

is an exhibit becomes part of the pleading?  Fed.R.Civ.P. 10(c).

The answer to this question is no.  The Trustee Motion is not a "written

---

[13] Federal Rule of Civil Procedure 7 (a) states, in relevant portion, "[o]nly these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third party complaint; and (7) if the court orders one, a reply to an answer."

instrument" under the definition articulated by the Third Circuit and other courts

and, therefore, may not be incorporated into the Complaint.  Holding that an

affidavit is not a "written instrument" per Rule 10(c), the Third Circuit noted that

"[t]he case law demonstrates . . . that the types of exhibits incorporated within the

pleadings by Rule 10(c) consist largely of documentary evidence, specifically,

contracts, notes, and other writings[s] on which [a party's] action or defense is

based."  Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989) (internal citations and

quotations omitted).  See also DeMarco v. Depotech Corp., 149 F.Supp.2d 1212

(S.D. Ca. 2001) (relying on Rose and declining to allow the incorporation of an

affidavit).[14]  A "written instrument" has been defined as "a document evidencing

legal rights or duties or giving formal expression to a legal act or agreement, such

as a deed, will, bond, lease, insurance policy or security agreement."  Murphy v.

Cadillac Rubber & Plastics, Inc., 946 F.Supp. 1108, 1115 (W.D.N.Y. 1996) (citing

Black's Law Dictionary 801, 1612 (6th ed.1990)).  The Murphy Court added that it

could "find no decision allowing a plaintiff's own supporting statement . . . to be

considered part of the pleadings in a motion to dismiss."  946 F.Supp. at 1115.

See also  U.S. v. Longshoremen's Assoc., 518 F.Supp.2d 422, 466 (E.D.N.Y.

2007) (declining to find that pleadings and other documents attached to the

complaint were "written instruments" because they were found to be "nothing

---

[14] The Court has considered Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969), which,
unlike Rose, permitted the incorporation of an affidavit pursuant to Rule 10.  However, Schnell does not
contain an analysis of the meaning of "written instrument" and, more importantly, unlike Rose, it is not
binding precedent on this Court.

more than self-serving statements prepared by the plaintiff" and contained "no

independent evidentiary value").

Similarly here, the Trustee Motion does not fit the definition of a "written

instrument;" it is not a document evidencing legal rights or duties.  Murphy v.

Cadillac Rubber & Plastics, Inc., 946 F.Supp. 1108, 1115 (W.D.N.Y. 1996).  Nor

is it a piece of documentary evidence, such as a contract, note, or agreement.

Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989).  Rather, the Trustee Motion, a

document drafted by the Cabots' and the Companies' counsels, essentially is a

self-serving statement by the Plaintiffs regarding both the background of this

adversary proceeding and the details surrounding the allegations against the

Debtor.  For this reason, the Court finds that the Trustee Motion is not a "written

instrument" pursuant to Federal Rule 10(c).  The Plaintiffs, therefore, will not be

permitted to incorporate this exhibit by reference.

### The Declaratory Judgment Action Complaint May be Incorporated

Plaintiffs also seek to incorporate by reference (as "Exhibit B" to the

Complaint) the Complaint for Declaratory Judgment filed as Adversary

No. 10-0129.  Unlike the Trustee Motion, there is no question that this document,

which is a complaint, is a pleading.  See Fed.R.Civ.P. 7(a).  As such, the first part

of Rule 10(c), stating that "[a] statement in a pleading may be adopted by

reference elsewhere in the same pleading or in any other pleading or motion"

applies with regard to this exhibit.  Fed.R. Civ.P. 7(a).  The Debtor does not

16

dispute this.  Rather, he asserts that the Plaintiffs should not be permitted to incorporate the Declaratory Judgment Action Complaint because it was filed in a different adversary proceeding against a different defendant.  Motion at 10.

Although Rule 10(c) is "not expressly limited to pleadings in the same action, it has been held that allegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference."  Wright & A. Miller, 5A Federal Practice & Procedure § 1326 (2004).  Even so, the Debtor cites no authority for the proposition that actions filed within a single bankruptcy case constitute separate actions.[15]  The Court agrees with the Plaintiffs on this point that the pleadings in question - the Complaint and the Declaratory Judgment Action Complaint - were filed in the "same action" for purposes of Rule 10(c).  Mr. Geiger's bankruptcy case is, as the Plaintiffs points out, an umbrella under which all actions concerning his estate must be brought pursuant to the Bankruptcy Rules.  See Bankruptcy Rule 7001; Response at 10-11.  The fact that the Declaratory Judgment Action Complaint does not include parties identical to those named in this Complaint is of no moment.  Motion at 10.  The pleadings in question directly relate to, materially affect, and are filed in a single bankruptcy case.  The Court, therefore, holds that incorporation by reference of the Declaratory Judgment Action is permissible pursuant to Federal Rule 10(c).

_____

[15] The cases cited by the Debtor for the proposition that the Plaintiffs should not be permitted to incorporate a complaint in a different adversary proceeding discuss the lack of ability of plaintiffs to merge *state* and *federal* suits.  See, e.g., Gooden v.Crain, 2007 WL 4166145 (5th Cir. Nov. 21, 2007); Davis v. Bifani, 2007 WL 1216518 (D. Colo. Apr. 24, 2007); Cooper v. Nationwide Mutual Ins. Co., 2002 WL 31478874 (E.D. Pa. Nov. 7, 2002).  This is not the issue here.

### *The Complaint Does not Comply with Rule 8*

That said, upon careful consideration of the Complaint in the Non-

dischargeability Adversary, the Court finds that the pleading does not meet

Rule 8's requirements that a pleading contain a "short and plain statement of the

claim showing that the pleader is entitled to relief" and that "[e]ach allegation must

be simple, concise, and direct." Fed.R.Civ.P. 8(a)(2), (d)(1).[16]  The purpose of

Rule 8 is "to prevent complaints that are ambiguous or vague enough to impede

the defendant's ability to form a responsive pleading." Young v. Centerville

Clinic, Inc., 2009 WL 2448003, at *1 (W.D. Pa. Aug.10, 2009) (citing Schaedler

v. Reading Eagle Publications, Inc., 370 F.2d 795, 783 (3d Cir. 1967)). Young,

which held that a "haphazard" and disorganized amended complaint should be

dismissed, noted that the complaint "does not clarify which facts actually apply to

which claims. The Amended Complaint . . . creates an undue burden for the

Court and the Defendant to sift through. . . ." Id. at *2. See also Glenn v.

Hayman, 2007 WL 894213, at *2 (D.N.J. Mar. 21, 2007) ("length and complexity

may doom a complaint by obfuscating the claim's essence . . . judges and

adverse parties need not try to fish a gold coin from a bucket of mud") (citing In re

Westinghouse Sec. Litig., 90 F.3d 696, 703 (3d Cir. 1996)) (additional citations

omitted).

---

[16] The incorporation by reference of the Trustee Motion already has been disallowed on other grounds (see pgs. 14-16 above) and, therefore, that portion of the Complaint will not be considered in this part of the Opinion.  However, the Court notes that the Complaint becomes even more confusing and cumbersome - and even less in conformity of Rule 8's mandate to submit a "short and plain statement" - when the Complaint as originally filed (including all exhibits) is considered.

The Complaint here fails to satisfy the pleading requirement of Rule 8; it

neither sets forth a short and plain statement of the claim, nor is each allegation

simple, concise, and direct.  There are three essential problems with the

Complaint.  First, rather than set forth the facts that support and lead to their

allegations, the Plaintiffs attempt simply to incorporate the Trustee Motion and

Declaratory Judgment Action.[17]  Second, as a result of the first problem, the

Plaintiffs arrive at an estimation of $4,523,127 in damages in each count of the

Complaint with insufficient support for how precisely they arrived at this figure.

See Complaint, ¶¶22, 30, 37.[18]  The Third and most serious problem with the

Complaint is that it leaves the reader - the Defendant and the Court - to sift

through many pages of attached material trying to figure out which fact goes with

which allegation.  The Complaint itself, which is a mere eight pages (as opposed

to the 52 pages of attached material) is conclusory and, therefore, wholly

insufficient.  It provides no details of the background of the allegations or the

details as to how the mass of information provided in the exhibits relates to the

brief synopsis of the relief sought.  Putting together the puzzle of matching the

bare-bones allegations with the meat of the attached materials is the job of the

Plaintiffs, not of the Debtor or the Court.  For this reason alone, the Complaint

must be dismissed.  See U.S. v. Int'l Longshoremen's Assoc., 518 F.Supp.2d

---

[17] The Plaintiffs' central premise is that the allegations in the Complaint are "[b]ased on the record in the Actions" (the Declaratory Judgment Action and the Removed Adversary).  Complaint, ¶16.

[18] The Plaintiffs' breakdown of this sum in paragraphs 20, 28, and 35 of the Complaint does not provide a satisfactory explanation as to how this figure was achieved.

422, 464 (E.D.N.Y. 2007) (finding a violation of Rule 8 where Plaintiff sought to incorporate factual allegations essential to the complaint and noting "[i]t is not the Court's responsibility to read Plaintiff's story and then try to determine which claim goes with which facts or which facts go with which Defendant or claim.  This is the Plaintiff's responsibility.")  (internal quotations and citations omitted).[19]

### Standing of Individual Plaintiffs

Because the Complaint will be dismissed, the Court will not discuss the Debtor's arguments in the Motion that the Complaint fails to plead fraud with particularity and fails to state a claim under the requirements of 11 U.S.C. §§ 523(a)(4) or (a)(6).  Motion at 15-21.  However, the Court will address the Defendant's argument that the individual Plaintiffs (William P. Cabot, M.D., Susan Cabot, Adam Shipley Cabot, Brandon Scott Cabot and Jean Adams) (collectively, the "Individual Plaintiffs") lack standing to bring this suit directly against the Debtor because this argument, unlike the more substantive dilemmas dealing with the merits of the causes of action, is both a preliminary question and one that can be discussed based on the Complaint as it stands (without considering the Exhibits).  Motion at 21-24.

The assertion by the Debtor that the Individual Plaintiffs must bring this suit as a derivative action and cannot bring the Complaint as currently styled (*i.e.*, a

---

[19]  The Court is mindful, as the Plaintiffs point out, that Federal Rule 10(c) is intended, in part, to "facilitate pleading[s] that are 'short, concise, and free of unwarranted repetition,'" as well as "to promote 'convenience' in pleading."  In re Morrison, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (citation omitted); Response at 9, n.3.  However, a pleading which takes advantage of the Rule 10's incorporation permittance must still satisfy the requirements of Rule 8.  U.S. v. Int'l Longshoremen's Assoc., 518 F.Supp.2d 422, 465-66 (E.D.N.Y. 2007).

direct suit against the Debtor) is correct.  That is, the Complaint as filed does not meet the requirements of Federal Rule 23.1 for a derivative lawsuit.[20]  A shareholder's derivative action is "one in which a shareholder asserts a claim belonging to the corporation and on the corporation's behalf."  Perkins v. Daniel, 2007 WL 4322596 (D.N.J. Dec. 6, 2007) (citations omitted).

As the court explained in In re Earned Capital Corp., 331 B.R. 208 (Bankr. W.D. Pa. 2005):

> It is hornbook law that claims asserted for the benefit of stockholders *qua* stockholders in a corporation because of the tortious acts of its officers or those actions in conjunction with them is a class suit, a derivative action, and recovery is for the benefit of the corporation directly and indirectly to its stockholders. . . .

Id. at 221(quoting Davis v. U.S. Gypsum Co., 451 F.2d 659 (3d Cir. 1971)) and holding that the plaintiffs had no standing to sue when the "alleged injury is

---

[20] F.R.C.P. 23.1 discusses the requirements for derivative actions and states, in relevant portion,

(a) Prerequisites.  This rule applies when one or more shareholders or members of a corporation . . . bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce.  The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

(b) Pleading Requirements.  The complaint must be verified and must:

(1) allege that the Plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, of necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

inflicted upon the corporation").  Before commencing a derivative lawsuit, a

shareholder must make a demand on the board of directors to pursue the action.

Fed.R.Civ.P. 23.1; Warden v. McLelland, 288 F.3d 105, 110-11 (3d Cir. 2002).

Here, there is no question that the Individual Plaintiffs[21] seek relief on

behalf of the Companies.  The alleged wrongdoing by the Debtor involves

misappropriating millions of dollars of "Company funds."  Complaint,

¶¶16,22,30,38.  The Complaint contains no allegation that the Plaintiffs have

been harmed individually, separate and apart from their status as shareholders.

This suit is, rather, an action by stakeholders in the Companies filed against a

former officer and seeking redress of certain alleged wrongdoing perpetrated

while the Defendant was a director of the Companies.  Therefore, it must be filed

as a derivative action.  Yet the Complaint fails to indicate that the procedure

required by Rule 23.1 was followed, namely that a demand was made on the

board of directors.  See e.g. Fagin v. Gilmartin, 432 F.3d 276, 285 n.2 (3d Cir.

2005) ("Rule 23.1 . . . requires plaintiffs . . . to state 'with particularity' the efforts

they have made to secure action from the directors or, alternatively, why they

have not made such efforts.").

Further, and equally troubling for the Individual Plaintiffs' effort to acquire

standing in this adversary proceeding, is the fact is that the Companies already

---

[21] Each of the individual Plaintiffs is a shareholder except for Jean Adams, who is a "beneficial owner of approximately 52% of the shares of both of the Companies."  Complaint, ¶¶3-7.

*are* prosecuting this action; they are co-Plaintiffs in this adversary proceeding.  It

makes no sense, therefore, for the Individual Plaintiffs to make a demand on the

Companies' boards[22] when the decision to pursue litigation has already been

made.  See Kanter v. Barella, 489 F.3d 170, 176 (3d Cir. 2007) ("[t]he purpose of

Rule 23.1's demand requirement is to 'afford the directors an opportunity to

exercise their reasonable business judgment and waive a legal right vested in the

corporation in the belief that its best interests will be promoted by not insisting on

such a right.'") (quoting Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96

(1991)).  Because the Companies have already exercised their rights and

decided to pursue litigation against the Debtor, the Individual Plaintiffs lack

standing and must be dismissed from this adversary proceeding with prejudice.[23]

See Kaufman v. Safeguard Scientifics, Inc., 587 F.Supp. 486, 488 (E.D. Pa.

1984) ("[i]n the event the board decides to sue, the shareholder need not bring a

derivative action on behalf of the corporation").

**The Companies Should Have the Opportunity to Re-plead**

While the Complaint will be dismissed, it will not, as the Debtor seeks, be

dismissed with prejudice.  The Plaintiffs - the Companies, but not the Individual

---

[22]  It appears that two of the Plaintiffs, Susan Cabot and Jean Adams, are on the board of the
Companies (but are not the only members of the board).  Main Bankruptcy Case, Docket Entry No. 15
at ¶52.  This is not detailed in the Complaint.

[23]  Leave to amend may be denied "if amendment would be futile."  Alvin v. Suzuki, 227 F.3d 107,
121 (3d Cir. 2000).  Amendment would be futile in this proceeding because, as discussed, the Companies
are already Plaintiffs in this proceeding.

Plaintiffs (as discussed above) - may amend their Complaint, making clear the basis of their claims in the body of the Complaint itself rather than relying on the attached exhibits.  The Debtor argues, in suggesting that the Complaint should be dismissed with prejudice, that the Plaintiffs have sought to toll the June 8, 2010 deadline to oppose dischargeability by filing the Complaint four days prior to this deadline.  Main Bankruptcy Case, Docket Entry No. 75; Bankruptcy Rule 4007(c); Motion at 7.  However, the Debtor provided no evidence of such dilatory motives on the part of the Plaintiffs.

In granting leave to amend, the Court has considered both the lack of any evidence to support the Debtor's contention that the Plaintiffs are trying to toll the Rule 4007 deadline by filing an inadequate pleading close to the due-date, and that Rule 15(a)[24] "counsels in  favor of amendment even when a party has been less than perfect in the preparation and presentation of a case." Arthur v. Maersk, Inc., 434 F.3d 196, 206 (3d Cir. 2006).  See also Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) ("[w]e have held that motions to amend pleadings should be liberally granted. . . . Under the liberal pleading philosophy of the federal rules as incorporated in Rule 15(a), an amendment should be allowed whenever there has not been undue delay, bad faith on the part of the [movant], or prejudice to the [nonmovant] as a result of the delay") (citations omitted).

---

[24] Federal Rule of Civil Procedure 15(a)(2) states, in relevant portion, that a court "should freely give leave [to amend a pleading] when justice so requires."

24

Here, Plaintiffs make no showing of bad faith, undue delay, or prejudice.

Therefore, the Court holds that the liberal pleading philosophy of the Federal

Rules permit the Plaintiffs to amend their Complaint.

## IV. SUMMARY

The Plaintiffs cannot incorporate the Trustee Motion by reference pursuant

to Rule 10, although the Declaratory Judgment Action Complaint properly may be

incorporated.  Nonetheless, the Complaint will be dismissed without prejudice

because it violates Federal Rule 8's mandate that a short and plain statement of

a claim must be pled.  The Court further holds that the Individual Plaintiffs lack

standing to pursue this cause of action and must be dismissed from this

adversary proceeding with prejudice.  An order to this effect will follow.

Dated:  September 29, 2010.        _____

JEAN K. FITZSIMON
United States Bankruptcy Judge